**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| BONNIE LAPWOOD, on behalf of herself and all others similarly situated, | Case No. 8:24-cv-824 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| SOUTHSTATE BANK, N.A., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Bonnie Lapwood, on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendant, SouthState Bank, N.A., ("SouthState" or "Defendant"):

## INTRODUCTION

1.      On February 7, 2024, SouthState Bank, a bank headquartered in Florida, lost control over its computer network and the highly private information stored on the computer network in a data breach perpetrated by cybercriminals ("Data Breach").

2.      On information and belief Data Breach began on or around February 7, 2024. It is unknown for precisely how long the cybercriminals had unfettered access to Defendant's network and customers' highly private information before the breach was discovered.

3.      Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to customers' personally identifiable information ("PII"), including their names, financial account numbers, and Social Security numbers.

4.     On information and belief, cybercriminals bypassed Defendant's inadequate security systems to access customers' PII in its computer systems.

5.     On or about February 9, 2024, SouthState notified the Securities and Exchange Commission of the incident and on or about March 29, 2024, SouthState finally notified Class Members about the widespread Data Breach ("Breach Notice"). Plaintiff's Data Breach is attached as **Exhibit A**.

6.     Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its victims how many people were impacted, how the breach happened, or why it took the Defendant two months after discovering the Breach to begin notifying victims that hackers had gained access to highly private information.

7.     Defendant's failure to timely detect and report the Data Breach made its victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

8.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

9.     In failing to adequately protect customers' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former customers.

10.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11.     Plaintiff, Bonnie Lapwood, is a Data Breach victim.

12.     Accordingly, Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13.     Plaintiff, Bonnie Lapwood, is a natural person and citizen of Georgia, residing in Atlanta, Georgia, where she intends to remain. Ms. Lapwood is a Data Breach victim, receiving SouthState's Breach Notice on March 29, 2024.

14.     Defendant, SouthState Bank, N.A., is a Florida corporation with its principal place of business at 1101 1st Street South, Suite 202, Winter Haven, Florida, USA.

## JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; Plaintiff and Defendant are citizens of different states.

16.     SouthState is incorporated in Florida and maintains its principal place of business in at 1101 1st Street South, Suite 202, Winter Haven, Florida, USA. SouthState is thus a Florida citizen.

17.     This Court has personal jurisdiction over SouthState because it is a citizen in this District and maintains its headquarters and principal place of business in this District.

18.     Venue is proper because SouthState maintains its headquarters and principal place of business in this District.

## BACKGROUND FACTS

### *SouthState*

19.     SouthState Bank operates more than 240 branches and locations in Alabama, Florida, Georgia, North Carolina, South Carolina and Virginia. SouthState Bank employs more than 5,162 people and generates approximately $1.7 billion in annual revenue.[1]

20.     As part of its business, Defendant receives and maintains the PII of thousands of its current and former customers.

21.     After collecting its customers' PII, SouthState maintains the PII in its computer systems.

22.     In working with customers' highly sensitive data, SouthState advertises that "[p]rotecting our customers is our top priority" and that it is "constantly monitoring our security and safeguarding your information."[2]

23.     As a financial institution that regularly handles customers' highly PII, SouthState understood the need to protect its customers' data and prioritize its data security.

24.     Despite recognizing its duty to do so, on information and belief, SouthState has not implemented reasonably cybersecurity safeguards or policies to protect its customers' PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, SouthState leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to customers' PII.

### *SouthState Fails to Safeguard Customers' PII*

25.     On information and belief, SouthState collects and maintains customers' PII in its

---

[1] SouthState Bank Notifies SEC of Cyberattack, Raising Concerns of Possible Data Breach, JDSupra, https://www.jdsupra.com/legalnews/southstate-bank-notifies-sec-of-9226612/ (last visited April 2, 2024).
[2] Privacy Information, SouthState Bank, https://www.southstatebank.com/global/help/security-privacy-information/card-compromise-awareness (last visited April 2, 2024).

computer systems.

26.     In collecting and maintaining PII, SouthState implicitly agrees it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

27.     According to the Breach Notice, SouthState "recently discovered and took measures to address an incident that involved unauthorized access to [its] network." SouthState admits that, following an internal investigation, it discovered "that there was unauthorized access to certain folders in [its] network on February 7, 20204." Ex. A.

28.     In other words, Defendant's investigation revealed that its network had been hacked by cybercriminals and that Defendant's inadequate cyber and data security systems and measures allowed those responsible for the cyberattack to obtain files containing a treasure trove of thousands of SouthState's customers' personal and highly sensitive PII.

29.     Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

30.     Despite its duties and alleged commitments to safeguard PII, SouthState does not follow industry standard practices in securing customers' PII, as evidenced by the Data Breach.

31.     In response to the Data Breach, SouthState contends that it has or will be taking "steps to further enhance our existing security measures."  Ex. A. Although SouthState fails to expand on what these alleged "steps" are, such safeguards should have been in place before the Data Breach.

32.     Through its Breach Notice, SouthState recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity." Ex. A.

33.     On information and belief, SouthState has offered one year of complimentary credit monitoring services to victims during that time, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

34.     Even with only one year of credit monitoring, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

35.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

36.     On information and belief, SouthState failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its customers' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

37.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the financial and financial adjacent industry preceding the date of the breach.

38.     In light of recent high profile data breaches at other financial institutions, SouthState knew or should have known that their electronic records and customers' PII would be targeted by cybercriminals.

39. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[3] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[4]

40. Indeed, cyberattacks against financial institutions and financial adjacent industries have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [5]

41. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including SouthState.

***Plaintiff's Experience and Injuries***

42. Ms. Lapwood is a customer of Defendant – having received a home mortgage from Defenant in October 2022.

43. As a condition of her mortgage, Plaintiff provided Defendant with her PII. Defendant used that PII to facilitate provision of services and to collect payment.

44. Plaintiff provided her PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing

---

[3] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited April 2, 2024).
[4] *Id.*
[5] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited April 2, 2024).

legal duty and obligation to protect that PII from unauthorized access and disclosure.

45.     Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of PII.

46.     Ms. Lapwood received SouthState's breach notice on or about March 29, 2024.

47.     SouthState has a duty to safeguard her information according to its internal policies and state and federal law.

48.     SouthState deprived Ms. Lapwood of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about it for two months.

49.     As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's PII for theft by cybercriminals and sale on the dark web.

50.     Plaintiff does not recall ever learning that her PII was compromised in a data breach incident, other than the breach at issue in this case.

51.     As a result of the Data Breach and the recommendation of Defendant's Notice Ms. Lapwood has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

52.     Ms. Lapwood has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Ms. Lapwood fears for her personal financial security and uncertainty over what PII exposed in the Data Breach. Ms. Lapwood has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Indeed, Ms. Lapwood is experiencing significant anxiety and emotional distress regarding the exposure of her identifying information, which she wished to keep private. This goes far

beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

53.     Plaintiff suffered actual injury from the exposure of her PII —which violates her rights to privacy.

54.     Ms. Lapwood has suffered actual injury in the form of damages to and diminution in the value of her PII —a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

55.     Ms. Lapwood has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties and possibly criminals.

56.     Indeed, Plaintiff experienced an increase in spam phone calls since the Data Breach, suggesting that her information has been placed in the hands of cybercriminals.

57.     Ms. Lapwood has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

58.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

59.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, date of birth, Social Security number, or driver's license number, without permission, to commit fraud or other crimes.

60.     The types of PII compromised and potentially stolen in the Data Breach is highly

valuable to identity thieves. The customers' stolen PII can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

61.     Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

62.     Identity thieves can also use the stolen data to harm Plaintiff and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits. A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health- related or criminal record fraud, face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

63.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.   The loss of the opportunity to control how their PII is used;

    b.   The diminution in value of the PII;

    c.   The compromise and continuing publication of their PII;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Delay in receipt of tax refund monies;

    g.   Unauthorized use of stolen PII; and

    h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

64.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

65.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

66.    It can take victims years to spot identity or PII theft, giving criminals plenty of time

to use that information for cash.

67.     One such example of criminals using PII for profit is the development of "Fullz" packages.

68.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

69.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

70.     Defendant disclosed the PII of Plaintiff and the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

71.     Defendant's use of outdated and insecure computer systems and software that are

easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, as evidenced by its complete failure to prevent malware in its systems, demonstrates a willful and conscious disregard for privacy, and has exposed PII of Plaintiff and members of the proposed Class to unscrupulous operators, con-artists, and criminals.

72.     Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

73.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

74.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

> a.     protect the sensitive consumer information that they keep;
>
> b.     properly dispose of private information that is no longer needed;
>
> c.     encrypt information stored on computer networks;
>
> d.     understand their network's vulnerabilities; and
>
> e.     implement policies to correct security problems.

75.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

76.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

77.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

78.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### *Defendant Fails to Comply with Industry Standards*

79.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

80.     Several best practices have been identified that a minimum should be implemented by companies in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow

these industry best practices, including a failure to implement multi-factor authentication.

81. Other best cybersecurity practices that are standard for companies like Defendant include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

82. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

83. These foregoing frameworks are existing and applicable industry standards for a company's obligations to provide adequate data security for its consumers. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

84. Plaintiff brings this action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

85. Plaintiff sues on behalf of herself and the proposed Class ("Class"), defined as follows:

**All individuals in the United States whose PII was accessed without authorization in the Data Breach, including all those who received a notice of the Data Breach.**

86.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

87.     Plaintiff reserves the right to amend the class definition.

88.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements for suing as representative parties:

89.     **Numerosity**. Plaintiff is representative of the proposed Class, consisting at least 100 members, far too many to join in a single action;

90.     **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

91.     **Typicality.** Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

92.     **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with Class members' interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

93.     **Commonality.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

      a.   Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  Whether Defendant was negligent in maintaining, protecting, and securing PII;

d.  Whether Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

e.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.  Whether Defendant's Breach Notice was reasonable;

g.  Whether the Data Breach caused Plaintiff's and the Class' injuries;

h.  What the proper damages measure is; and

i.  Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

94.     Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

95.     Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

96.     Plaintiff and members of the Class entrusted their PII to SouthState. Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their PII and keeping it from being compromised, lost, stolen, misused, and or/disclosed to

unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure the PII of Plaintiff and the Class was adequately secured and protected, including using encryption technologies. Defendant further had a duty to implement processes that would detect a breach of its security system in a timely manner.

97.     SouthState was under a basic duty to act with reasonable care when it undertook to collect, create, and store Plaintiff's and the Class's PII on its computer system, fully aware–as any reasonable entity of its size would be–of the prevalence of data breaches and the resulting harm such a breach would cause. The recognition of Defendant's duty to act reasonably in this context is consistent with, *inter alia*, the Restatement (Second) of Torts § 302B (1965), which recounts a basic principle: an act or omission may be negligent if the actor realizes or should realize it involves an unreasonable risk of harm to another, even if the harm occurs through the criminal acts of a third party.

98.     Defendant knew that the PII of Plaintiff and the Class was information that is valuable to identity thieves and other criminals. Defendant also knew of the serious harms that could happen if the PII of Plaintiff and the Class was wrongfully disclosed.

99.     By being entrusted by Plaintiff and the Class to safeguard their PII, Defendant had a special relationship with Plaintiff and the Class. Plaintiff's and the Class's PII was provided to SouthState with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiff and the Class of any security concerns that might call for action by Plaintiff and the Class.

100.    Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite failures and intrusions, and

allowing unauthorized access to Plaintiff's and the Class's PII.

101.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their PII would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII of Plaintiff and the Class and all resulting damages.

102.    The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' PII.

103.    As a result of Defendant's failure, the PII of Plaintiff and the Class were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII was disclosed to third parties without their consent. Plaintiff and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

104.    Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

105.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

106.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as

Defendant, of failing to use reasonable measures to protect customer information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's PII.

107.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

108.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. Defendant were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

109.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

110.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

111.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

112.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

113.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

114.    Had Plaintiff and the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

115.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

116.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

117.    Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as SouthState fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

**COUNT III**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

118.    Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

119.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

120.    Defendant owed a duty to its customers, including Plaintiff and the Class, to keep this information confidential.

121.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII is highly offensive to a reasonable person.

122.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

123.    The Data Breach constitutes an intentional interference with Plaintiff and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

124.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

125.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

126.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

127.     As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

128.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

129.     Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

130.     In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT IV**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

131.     Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

132.     Plaintiff and Class members were required to provide their PII to Defendant as a condition of receiving products and/or services provided by Defendant. Plaintiff and Class members provided their PII to Defendant in exchange for Defendant's services.

133.     Plaintiff and Class members reasonably understood that a portion of the funds they paid Defendant would be used to pay for adequate cybersecurity measures.

134.     Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on

Defendant's duties under state and federal law and its internal policies.

135.    Plaintiff and the Class members accepted Defendant's offers by disclosing their PII to Defendant in exchange for products and/or services.

136.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

137.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

138.    After all, Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

139.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

140.    SouthState knew that if it were to breach these contracts with its customers, Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their PII.

141.    SouthState breached its contracts with its customers' when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' PII.

142.    As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by SouthState's failure to use reasonable data security measures to store their PII, including but not limited to, the actual harm through the loss of their PII to cybercriminals.

143.    Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**COUNT V**
**Unjust Enrichment**

**(On Behalf of Plaintiff and the Class)**

144.    Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

145.    This claim is pleaded in the alternative to the breach of contract claim.

146.    Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from using their PII (and payment) to facilitate its provision of services and to collect payment.

147.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

148.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

149.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

150.    Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

151.    If Plaintiff and Class Members knew that Defendant had not secured PII, they would not have agreed to have their PII provided to Defendant.

152.    Plaintiff and Class Members have no adequate remedy at law.

153.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class

Members have suffered and will suffer injury, including, but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

154.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

155.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

### COUNT VI
### Violation of Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. §§ 501.201, *et seq.*
### (On Behalf of Plaintiff and the Class)

156.    Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

157.    This cause of action is brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

158.    The purpose of FDUTPA is to "protect the consuming public and legitimate

business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

159.    Another purpose of FDUTPA is to construe consumer protection as "consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

160.    Plaintiff and Class members all constitute "[c]onsumers" under FDUTPA because they are all "individual[s]." Fla. Stat. § 501.203.

161.    Plaintiff and Class members each constitute an "[i]nterested party or person" under FDUTPA because they are all "affected by a violation" of FDUTPA. Fla. Stat. § 501.203.

162.    FDUTPA applies to Defendant because Defendant engages in "[t]rade or commerce" as defined as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203.

163.    FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

164.    FDUTPA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2).

165.    Relevant here, is that "[v]iolation[s]" of FDUTPA is broadly defined to include violations of:

  a.   "Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 *et seq*." Fla. Stat. § 501.203.

b.   "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." Fla. Stat. § 501.203.

c.   "Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203.

166.   Under FCRA, the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), Defendant was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class members' PII. Defendant was also under an obligation expressly under Florida law, where Defendant is headquartered and managed, to adequately protect Plaintiff's and Class members' PII.

167.   Moreover, FDUTPA requires that Defendant (1) take reasonable measures to protect and secure data in electronic form containing PII; (2) take reasonable measures to dispose of or destroy PII; and (3) provide notice to consumers and consumer reporting agencies subject to the FCRA when a data security incident occurs that compromises PII. Fla. Stat. §§ 501.171.

168.   Defendant violated FDUTPA by, *inter alia*:

a.   failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII which was a direct and proximate cause of the Data Breach;

b.   failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

  c.  failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Data Breach;

  d.  omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII; and

  e.  omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

169. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII.

170. Defendant intended to mislead Plaintiff and Class members and induce them to rely on its omissions.

171. Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted Plaintiff's and the Class's PII while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered

through reasonable investigation.

172.    Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

173.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

174.    Plaintiff and Class members seek declaratory judgement that Defendant's practices were unreasonable and inadequate and thus caused the Data Breach.

175.    Plaintiff and Class members seek injunctive relief enjoining the wrongful acts described *supra* and requiring Defendant to use and maintain proper standards for data security including, *inter alia*, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing. Fla. Stat. § 501.211(1).

176.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law. Plaintiff seeks actual damages, attorneys' fees, and costs under Fla. Stat. §§ 501.2105, 501.211(2).

**COUNT VII**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

177.    Plaintiff incorporates by reference paragraphs 1-94 as if fully set forth herein.

178.    Defendant became the guardian of Plaintiff's and Class Members' PII. Defendant became a fiduciary, created by its undertaking and guardianship of Plaintiff's and

Class Members' PII, to act primarily for their benefit. This duty included the obligation to safeguard Plaintiff's and Class Members' PII and to timely detect and notify Plaintiff and Class Members in the event of a data breach.

179.   Defendant knowingly undertook the responsibility and duties related to the possession of Plaintiff's and Class Members' PII for the benefit of Plaintiff and Class Members in order to provide Plaintiff and Class Members financial services.

180.   Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members within the scope of its relationship with them. Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to properly protect PII. Defendant further breached its fiduciary duties by failing to timely detect the Data Breach and notify and/or warn Plaintiff and Class Members of the Data Breach.

181.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered or will suffer concrete injury, including, but not limited to: (a) actual identity theft; (b) the loss of the opportunity to determine how and when their PII is used; (c) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their PII; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as it fails to undertake appropriate and adequate measures to protect Plaintiff's and Class

Members' PII in its continued possession; (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, and repair the impact of the PII compromised as a direct and traceable result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (h) nominal damages.

182.    As a direct and proximate result of Defendant's breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.   Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.   Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.   Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.   Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demand that this matter be tried before a jury.

Date: April 3, 2024

Respectfully submitted,

By: /s/ *Joshua R. Jacobson*
**JACOBSON PHILLIPS PLLC**
Joshua R. Jacobson (FBN 1002264)
joshua@jacobsonphillips.com
Jacob L. Phillips (FBN 120130)
jacob@jacobsonphillips.com
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
Telephone: (407) 612-2206

**TURKE & STRAUSS LLP**
Raina Borrelli
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com

*Attorneys for Plaintiff and Proposed Class*